## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

INGRID JIANG,                              )
                                           )
      Plaintiff,                     )
                                           )
    v.                                  )   Case No. 1:25-cv-1042-MSN-LRV
                                           )
ROUNDPOINT MORTGAGE                        )
SERVICING LLC, et al.,                     )
                                           )
                                           )
      Defendants.                    )
_____    )

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants RoundPoint Mortgage Servicing LLC ("RoundPoint"), James Watts ("Watts"), and Mary K. Riskey's ("Riskey's") Motion to Dismiss Plaintiff Ingrid Jiang's ("Plaintiff") Amended Verified Bill in Equity (Dkt. No. 15) (the "Motion to Dismiss") and Plaintiff's Motion for Pendente Lite Equitable Accounting (Dkt. No. 19) (the "Motion for Accounting"). On October 21, 2025, the District Judge referred the Motion to Dismiss and Motion for Accounting (collectively, the "Motions") to the undersigned "for purposes of issuing a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)." (Dkt. No. 27.) The Motions have been fully briefed and are ripe for consideration. (*See* Dkt. Nos. 16, 18, 21, 22, 23.) The undersigned finds that a hearing would not aid in the decision process and therefore proceeds on the papers.[1] *See* L. Civ. R. 7(J).

---

[1] The undersigned files this Report and Recommendation under 28 U.S.C. § 636(b)(1)(C). A copy of the Report and Recommendation will be provided to all interested parties.

1

## I.    <u>Factual Background</u>

The following facts are set forth in the Amended Verified Bill in Equity, which the Court construes as the Amended Complaint. [2] On March 5, 2021, Plaintiff Ingrid Y. Jiang and Zhongyan Xing executed a Note (the "Note") in the amount of $489,000.00 in favor of Quicken Loans, LLC ("Quicken Loans" or "Lender") in connection with a mortgage loan that they received from Quicken Loans in the same amount. (*See* Dkt. No. 10 at 12; Dkt. No. 16-1 at 1.) The mortgage loan was securitized as a lien against Plaintiff's home located at 7202 Calamo Street, Springfield, Virginia 22150 (the "Property"), as reflected in the corresponding Deed of Trust dated March 5, 2021. (*See* Dkt. No. 16-2 at 1.) The Deed of Trust was recorded with the Circuit Court of Fairfax County, Clerk's Office on March 10, 2021, at Book 26948, Page 1250. (*Id.*) Under the Deed of Trust, the "trustee" is Lawyers Title Realty Services, Inc. and the "Lender" is Quicken Loans. (*Id.*) At some subsequent point in time, RoundPoint became the servicer of Plaintiff's mortgage loan. (Dkt. No. 10 at 10.) Defendant Riskey is the Chief Financial Officer of RoundPoint and Defendant Watts is the Senior Vice President and Controller of RoundPoint. (*Id.*) Plaintiff brings this action against RoundPoint and against Riskey and Watts in their personal and official capacities, (collectively, "Defendants"). (*Id.*)

Pursuant to the Note, Plaintiff and Mr. Xing were required to make monthly payments in the amount of $3,203.27, until the loan matured on April 1, 2036, at which time all amounts due under the Note must be paid in full. (Dkt. No. 16-1 at 1.) The Amended Complaint asserts

---

[2] In addition to the Amended Complaint, the parties agree that the Court can consider the Note and Deed of Trust affixed to the Motion to Dismiss because they are "integral instruments that may be considered at Rule 12" stage. (Dkt. No. 18 at 11); *see also Goines v. Valley Cmty. Services Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("While a court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs, the court may also consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.") (citing Fed. R. Civ. P. 10(c), 12(b)(6), 12(d)). Additionally, because Plaintiff purports to bring this action in her capacity as "Co-Trustee" of the "Ingrid Jiang Family Irrevocable Trust," the Court considers the deeds affixed to the initial Complaint that appear to transfer the title of the Property to the Ingrid Jiang Family Irrevocable Trust. (*See* Dkt. No. 10 at 1, 6, 7, 8, 10, 53, 58; Dkt. Nos. 1-1, 1-2.)

2

"Plaintiff and her family paid no less than $149,264 toward" the loan. (Dkt. No. 10 at 12.) Plaintiff alleges that, unbeknownst to her, "the signed note itself was deposited, monetized, and used as the foundational asset for downstream financial gain-including pooling, securitization, and derivative contracts." (*Id.*) In that respect, Plaintiff alleges that her Note "was monetized through transfer into a Real Estate Mortgage Investment Conduit (REMIC) or Special Purpose Vehicle (SPV) where it became indistinct and untraceable due to pooling and batching." (*Id.* at 13, 15.) That conduct, in Plaintiff's view, "extinguished" RoundPoint's authority to collect monthly payments from Plaintiff or to otherwise enforce the Note and Deed of Trust against Plaintiff. (*Id.* at 12, 15.)

On May 6, 2025, Mr. Xing transferred his interest in the Property to Plaintiff via a quitclaim deed recorded with the Circuit Court of Fairfax County, Clerk's Office on May 19, 2025, at Book 28396, Page 0872. (*See* Dkt. No. 1-1 at 2.) That same day, Plaintiff executed a deed purporting to transfer the Property to the "Ingrid Jiang Family Irrevocable Trust." (*See* Dkt. No. 1-2 at 2.) Plaintiff alleges she is a Co-Trustee of the Ingrid Jiang Family Irrevocable Trust. (*See* Dkt. No. 10 at 1, 6, 7, 8, 10, 53, 58.)

On May 19, 2025, during a customer service call between Plaintiff and a RoundPoint representative, the representative stated that "Plaintiff was listed in their system as the original creditor, and RoundPoint as the debtor." (*Id.* at 12–13.)[3] On or about May 22, 2025, Plaintiff submitted a qualified written inquiry to RoundPoint asserting that Plaintiff and Mr. Xing "are the lawful originators of the [mortgage loan]" and that because RoundPoint "engaged in unauthorized and undisclosed securitization of the mortgage note," RoundPoint no longer had authority to collect monthly loan payments from Plaintiff or Mr. Xing. (*Id.* at 13; *see also* Dkt. No. 10-3 (Plaintiff's May 21, 2025 Letter to RoundPoint) at 2.) On or about June 9, 2025, Plaintiff alleges

---

[3] It appears that the representative misspoke by mixing up which party is the creditor and which is the debtor, as addressed below.

that she "fil[ed] UCC-1 financing statements" with the South Carolina Secretary of State's Office,[4] asserting that Plaintiff and Mr. Xing are the creditors or "secured parties," and RoundPoint is the "debtor" for purposes of the Note and Deed of Trust. (*See* Dkt. No. 10 at 13; Dkt. No. 10-5 (UCC Financing Statement).) On June 10, 2025, in an email to RoundPoint's customer service representative, Plaintiff again declared that she "is the original creditor that issued (extended) the credit," RoundPoint is the debtor, and RoundPoint is therefore "billing the party who extended the original credit – which is unlawful, deceptive and a breach of fiduciary duty." (Dkt. No. 10-6 (Plaintiff's June 10, 2025 Email to RoundPoint) at 1.)

On June 11, 2025, a RoundPoint representative emailed Plaintiff to advise that "[t]he customer service rep did provide incorrect information to [Plaintiff]" during the May 19, 2025 call. (Dkt. No. 10 at 13; *see also* Dkt. No. 10-7 (RoundPoint's June 11, 2025 Email to Plaintiff) at 1.) In a letter dated July 23, 2025, addressed to Plaintiff and Mr. Xing, RoundPoint explained that QuickenLoans, LLC was the original lender, Fannie Mae was the "current investor/owner of the loan," and "there has been no error by RoundPoint in the servicing of the loan and the debt is valid." (Dkt. No. 10 at 16; *see also* Dkt. No. 10-4 (RoundPoint's July 23, 2025 Letter to Plaintiff) at 1.) Accordingly, RoundPoint informed Plaintiff and Mr. Xing that they must submit their next monthly payment of $4,067.63 by August 1, 2025. (*See* Dkt. No. 10-4 at 1.) RoundPoint also sent Plaintiff copies of five documents: (i) the Note, (ii) the Deed of Trust, (iii) the welcome letter, (iv) the payment history for the loan, and (v) escrow disbursement amounts. (*Id.*) Plaintiff did not file those materials on the docket, but Defendants affixed the Note and Deed of Trust to their Motion to Dismiss. (*See* Dkt. Nos. 16-1, 16-2.)

---

[4] Plaintiff does not explain why she filed this form with the South Carolina Secretary of State's Office when the property at issue is in Virginia, but presumably Plaintiff did so because RoundPoint has offices in South Carolina. *See* https://roundpointmortgage.com/about/.

## II.   **Procedural Background**

On June 20, 2025, *pro se* Plaintiff filed a document titled "Verified Bill in Equity,"[5] which the Court construes as the initial Complaint. (Dkt. No. 1.)  The Complaint asserts five claims against Defendants RoundPoint, Watts, Mike Witt, and "all unknown beneficiaries or assignees:" rescission for failure of consideration and constructive fraud (Count I); constructive trust (Count II); equitable accounting (Count III); declaratory relief (Count IV); and restitution and disgorgement (Count V).  (Dkt. No. 1.)  After certain defendants filed a motion to dismiss (Dkt. No. 6), Plaintiff exercised her right under Federal Rule of Civil Procedure 15(a)(1)(B) to amend her pleading as a matter of course, and filed an "Amended Verified Bill in Equity," which the Court construes as an Amended Complaint (Dkt. No. 10).[6]

The Amended Complaint differs in several material respects from the initial Complaint. The Amended Complaint drops Mike Witt and adds Mary K. Riskey as a defendant.  (*Id.*)  The Amended Complaint also asserts a different set of eight claims: constructive fraud and fiduciary breach (Count I); imposition of constructive trust arising from fiduciary concealment and monetization of plaintiff's instrument (Count II); unjust enrichment and equitable restitution (Count III); equitable accounting and quasi-trust remedy (Count IV); disgorgement of ill-gotten gains and fiduciary profit (Count V); equitable estoppel to prevent inconsistent assertions of

---

[5] "A bill in equity was the written mechanism that commenced an original suit in a court of equity." *Hyatt v. Kappos*, 625 F.3d 1320, 1327 (Fed. Cir. 2010), *aff'd and remanded*, 566 U.S. 431 (2012).  After the adoption of the Federal Rules of Civil Procedure, federal courts no longer segregate law and equity claims into separate proceedings. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 471 (1962).  Accordingly, plaintiffs asserting equitable claims no longer file bills in equity, instead they file complaints or petitions. *Id.*; *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court").  As explained by a sister court, "[t]he concept of 'equity' usually arises in the foreclosure context when a defaulted borrower can allege tender of the amount of the lender's secured indebtedness in order to maintain a cause of action for irregularity in the sale procedure." *Woodruff v. Mason McDuffie Mortg. Corp.*, No. 19-cv-04300, 2020 WL 5210920, at *4 (N.D. Cal. Sept. 1, 2020).  Plaintiff has not put forth such a tender in this action.

[6] Although Plaintiff captions her pleading as "verified," she does not state under oath or under the penalty of perjury that she has reviewed the pleading and that the allegations therein are true. *See* 28 U.S.C. § 1746.  In this Report & Recommendation, the Court refers to this pleading as the "Amended Complaint."

5

obligation (Count VI); unclean hands barring equitable enforcement (Count VII); and declaratory injunction against future collection (Count VIII). (Dkt. No. 10.) Once more, Plaintiff asserts claims against certain "Unknown Defendants includ[ing] investors, trusts, special purpose vehicles, and third-party assignees who have received benefit-directly or indirectly-from the monetization or securitization of Plaintiffs signed instrument." (*Id.* at 11.)

On August 18, 2025, Defendants RoundPoint, Watts, and Riskey filed the Motion to Dismiss the Amended Complaint. (Dkt. No. 15.) On August 25, 2025, Plaintiff filed the Motion for Accounting, asking "the Court to order a sworn equitable accounting within 14 days," with respect to the "investor-side proceeds derived from Plaintiff's instrument." (Dkt. No. 19 at 1–3.) The undersigned addresses each motion in turn.

### III.   Proposed Findings and Recommendations

#### A. Motion to Dismiss

In requesting that this Court dismiss all eight claims in the Amended Complaint, Defendants argue that Plaintiff lacks standing to assert certain claims and otherwise fails to satisfy the plausibility pleading standard with respect to any claim. Although not raised by Defendants, the undersigned also considers whether the Court has subject matter jurisdiction over the claims in the Amended Complaint. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also* Fed. R. Civ. P. 12(h)(1) (explaining that a party waives lack of personal jurisdiction and insufficient service of process as defenses if not raised in the responsive pleading or Rule 12 motion to dismiss).

##### 1. Subject Matter Jurisdiction

Plaintiff invokes this Court's jurisdiction "in equity as defined in Article III, Section 2 of the U.S. Constitution and preserved through 28 U.S.C. § 2072(b)." (Dkt. No. 10 at 6.) Plaintiff clarifies that she "does not seek relief under any statute, nor does she rely on any statutory remedy,"

6

(*id.*), and that her claims do "not sound in statute, contract, or tort, but arises from the ancient and exclusive jurisdiction of equity," (*id.* at 7). Plaintiff then references 28 U.S.C. § 1331, 28 U.S.C. § 1655, 28 U.S.C. § 2201, and 28 U.S.C. § 2072(b). (*Id.* at 9). None of those statutes provide Plaintiff with a cause of action to initiate this civil case against Defendants.[7] It appears that Plaintiff has confused a court's authority to hear a case with a court's authority to fashion certain remedies when sitting in equity.

The Constitution extends "[t]he judicial Power of the United States" to "all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . . under their Authority." Art. III, §§ 1, 2. Additionally, Section 11 of the Judiciary Act of 1789, provides that "the circuit courts shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature at common law or in equity." 1 Stat. 73; *see also Atlas Life Ins. Co. v. W. I. S., Inc.*, 306 U.S. 563, 568 (1939). As the Supreme Court explained "[t]he 'jurisdiction' thus conferred on the federal courts to entertain suits in equity is an authority *to administer in equity suits the principles of the system of judicial remedies* which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." *Atlas Life Ins. Co. v. W. I. S., Inc.*, 306 U.S. 563, 568 (1939). Those equitable remedies are available only where the plaintiff has separately asserted a basis for the court's subject-matter jurisdiction pursuant to Chapter 85 of Title 28 (e.g., federal question jurisdiction under 28 U.S.C. § 1331, diversity jurisdiction under 28 U.S.C. § 1332). *Rahman v. Chenault*, No.

---

[7] 28 U.S.C. § 1331 concerns a court's original jurisdiction. 28 U.S.C. § 1655 discusses service of process on absent defendants thereby making it inapplicable here where the named defendants have filed a motion to dismiss. 28 U.S.C. § 2201 authorizes courts to issue declaratory judgments but only where there is a separate basis for subject-matter jurisdiction. Finally, 28 U.S.C. § 2072(b) provides that the federal rules of civil procedure and evidence do not abridge, enlarge, or modify any substantive right.

7

1:17-mc-13, 2017 WL 5574985, at *1 (E.D. Va. May 16, 2017), *aff'd*, 694 F. App'x 143 (4th Cir. 2017).

Plaintiff repeatedly disavows any statutory or constitutional basis for her claims. (*See* Dkt. No. 10 at 6–9, 24, 26, 33, 38, 51.) Thus, with this action proceeding between private parties, the only remaining avenue for subject matter jurisdiction is diversity jurisdiction. On February 17, 2026, the undersigned ordered the parties to submit citizenship disclosure forms, in accordance with this Court's Local Rules, to determine whether there was complete diversity of the parties. (Dkt. No. 36.) The parties filed citizenship disclosure forms which established that there is complete diversity. (*See* Dkt. Nos. 37, 39.) The other prerequisite for diversity jurisdiction is that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332. Liberally construing Plaintiff's request in the Amended Complaint for restitution in the amount of $149,264.00, the undersigned finds that Plaintiff sufficiently alleges the requisite amount in controversy. *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (explaining that "the allegations in *pro se* complaints should be liberally construed") (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10 (1980)) (per curiam). The undersigned therefore recommends finding that the Court has diversity jurisdiction over the eight claims in the Amended Complaint.

*2. Standing*

Article III, section 2 of the Constitution limits federal court jurisdiction to actual cases and controversies. *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017). Accordingly, "[s]tanding is a threshold jurisdictional question that ensures a suit is appropriate for the exercise of the [federal] courts' judicial powers." *Id.* (alteration in original) (quoting *Pye v. United States*, 269 F.3d 459, 466 (4th Cir. 2001)). To possess Article III standing, a plaintiff must have (1) suffered an injury in fact that is (2) traceable to the defendants' actions, and (3) is likely to be redressed by judicial intervention. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–61 (1992).

8

Further, a plaintiff must establish that she has standing as to each claim. *Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Here, Defendants argue that Plaintiff lacks standing to bring any claims against Watts and Riskey because the Amended Complaint does not allege traceability; it does not set forth "specific instances in which Watts or Riskey were involved in Plaintiff's Loan." (Dkt. No. 16 at 2.) Defendants further argue that Plaintiff's unjust enrichment, constructive fraud, and fiduciary breach claims hinge on the validity of certain Pooling and Servicing Agreements to which Plaintiff is not a party or beneficiary, therefore Plaintiff also lacks standing to assert those claims.

With respect to whether "there is [any] justiciable controversy between Plaintiff and Watts and Riskey," (Dkt. No. 16 at 2), the Amended Complaint alleges that Watts and Riskey harmed Plaintiff by permitting her loan to be securitized then concealing the securitization. Specifically, the Amended Complaint alleges that Riskey and Watts "each exercised personal discretion in directing, approving, or ratifying acts" to facilitate "the extraction of revenue traceable to Plaintiffs credit instrument," and they then concealed such transactions, which amounts to breaches of their fiduciary duties. (Dkt. No. 10 at 11.) The Amended Complaint reiterates the concealment allegations elsewhere, including by stating that Riskey "knowing[ly] fail[ed] to disclose material facts-while continuing enforcement [of the mortgage loan]" and "Watts exercised personal discretion over internal ledgers and failed to disclose material information that equity deems actionable." (*Id.* at 10.)

Defendants argue that these allegations are conclusory and ask this Court to instead credit Defendants' assertions that Watts and Riskey "had no involvement with Plaintiff's Loan."[8] (Dkt.

---

[8] Relatedly, Defendants contend that the Amended Complaint should be dismissed pursuant to Rule 8(a)(2) because "Plaintiff does not identify which purported violations were committed by RoundPoint, Riskey and/or Watts" and "[a]s a result, it is not possible to identify what specific alleged wrongdoing is being asserted against RoundPoint as opposed to Riskey or Watts." (Dkt. No. 16 at 1 n.1.) That contention also fails.

9

No. 16 at 7.) The latter assertions are "matters outside the pleadings" and will therefore be excluded. *See* Fed. R. Civ. P. 12(d). As for whether Plaintiff's allegations are "conclusory," Plaintiff does not merely set forth the legal conclusion that Riskey and Watts breached their fiduciary duties, she instead alleges that Riskey and Watts are responsible for specific acts and omissions that may amount to a legal harm. At this juncture, the Court must accept as true Plaintiff's well-pleaded allegations that senior executives personally acted on her mortgage loan and her "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

Additionally, Defendants ask that this case be dismissed because Plaintiff's claims rely on the legally incorrect assumption that any Pooling and Servicing Agreements concerning her Note (i.e. securitization) are invalid. (Dkt. No. 16 at 7–8.) Defendants further argue that, legally, Plaintiff cannot suffer injury as a result of that securitization. (*Id.*) In Plaintiff's opposition brief, she disputes Defendants' framing and argues that her primary contention is whether the Note was monetized and securitized without her consent and without the proper disclosures. (Dkt. No. 18 at 3) ("The injury pleaded is equitable and independent of PSA privity: Defendants' abuse of confidence and nondisclosure in the face of exclusive control over investor-side proceeds (the res), which induced Plaintiffs continued performance/forbearance and enabled unjust enrichment."). In other words, Plaintiff argues that Defendants can be liable for constructive fraud, unjust enrichment, and fiduciary breach solely because Defendants did not disclose to Plaintiff that the Note was being securitized, even assuming the corresponding Pooling and Service Agreements are valid. (*Id.* at 3, 6, 11; *see also* Dkt. No. 18-1 at 1.) Plaintiff also asserts that Defendants required monthly loan payments to which they were not entitled thus causing injury to her. (Dkt. No. 10 at

10

26, 27) ("The unconscionable result of dual profit-taking (monetization and monthly collection) is precisely the harm [*SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)] sought to remedy through constructive trust.").

Accepting all well-pleaded allegations in the Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the undersigned recommends finding that Plaintiff has asserted a concrete injury and she has standing to pursue her common law claims based on the alleged procedural defect of nondisclosure. *Hebb v. City of Asheville, N. Carolina*, 145 F.4th 421, 432 (4th Cir. 2025) ("In reviewing a motion to dismiss, we accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff.")

### 3.  *Failure to State a Claim Upon Which Relief Can be Granted*

Defendants move to dismiss all claims in the Amended Complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[9]  *Seabrook v. Driscoll*, 148 F.4th 264, 269 (4th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "In conducting this review, we take the facts in the light most favorable to plaintiff, but we need not accept' as true a complaint's legal conclusions, 'unwarranted inferences, unreasonable conclusions, or arguments.'"  *Id.* (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  Additionally, "*pro se* litigants are held to a lesser pleading standard than other parties." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).

---

[9] Plaintiff takes conflicting positions on the applicable standard of review for the Motion to Dismiss.  In the Amended Complaint, Plaintiff "asserts that no procedural standard-including the plausibility thresholds articulated in *Twombly* and *Iqbal*-may be applied to distort or displace the equitable nature of this Bill." (Dkt. No. 10 at 8.)  However, in her opposition to the Motion to Dismiss, Plaintiff favorably cites *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and the standard of review therein. (Dkt. No. 18 at 3); *see also Gonzales v. Freedom Mortg. Corp.*, No. 25-cv-01177, 2025 WL 4091951, at *3 (W.D. Tex. Dec. 5, 2025) (rejecting *pro se* plaintiff's argument that Rule 12(b)(6) was inapplicable "because he is invoking equity and this Court is sitting as a court of chancery"), *report and recommendation adopted,* No. 25-cv-01177, 2026 WL 244436 (W.D. Tex. Jan. 28, 2026).

At the outset, the undersigned notes that even applying the more forgiving standard of review to the *pro se* Amended Complaint, each claim fails because Plaintiff does not plausibly plead that Defendants had any obligation to disclose that her financial instrument was securitized, nor is it plausible that the securitization of her financial instrument extinguishes her obligation to make monthly mortgage loan payments.  These deficiencies are discussed more fully below.

Defendants move for dismissal on two grounds: (i) certain asserted claims are not true causes of action but rather remedies or affirmative defenses; and (ii) for the remaining common law claims, Plaintiff failed to plausibly allege the necessary elements.  In considering these arguments, the Court applies Virginia law because the Deed of Trust contains a choice-of-law provision stating that the governing law is "the law of the jurisdiction in which the Property is located," and the Property is in Virginia. (Dkt. No. 16-2 ¶ 16.)

First, Defendants contend that the following counts in the Amended Complaint are better understood as remedies, not causes of action: "imposition of constructive trust arising from fiduciary concealment and monetization of plaintiff's instrument" (Count II), "equitable accounting and quasi-trust remedy" (Count IV), and "disgorgement of ill-gotten gains and fiduciary profit" (Count V).  Defendants also argue that "unclean hands barring equitable enforcement," (Count VII) and "equitable estoppel to prevent inconsistent assertions of obligation" (Count VI) are affirmative defenses.  In her opposition brief, Plaintiff concedes that "constructive trust, accounting, disgorgement, estoppel, and unclean hands are remedies/defenses sought as relief." (Dkt. No. 18 at 11.)  Further, there are no common law causes of action in Virginia for "fiduciary concealment" or "monetization of plaintiff's instrument." (*See* Dkt. No. 10 at 17–31.)

Given Plaintiff's concession and the ample caselaw establishing that constructive trust, accounting, disgorgement, estoppel, unclean hands, fiduciary concealment, and monetization are

12

not cognizable causes of action, the undersigned recommends dismissing Counts II, IV, V, VI and VII. *See e.g.*, *CPI Sec. Sys., Inc. v. Vivint Smart Home, Inc.*, 145 F.4th 390, 402 (4th Cir. 2025) (describing "disgorgement [as] an equitable remedy based on the principle that a wrongdoer should not be permitted to make a profit out of his own wrong") (internal citations omitted); *Sims v. D & D Home Loans Corp.*, No. 2:07-cv-242, 2008 WL 11512379, at *2 (E.D. Va. Jan. 10, 2008) ("Claims for remedies of constructive or resulting trust are likewise remedies rather than independent causes of action."); *Microsoft Corp. v. #9 Software, Inc.*, No. 4:05-cv-106, 2005 WL 3447965, at *4 (E.D. Va. Dec. 15, 2005) (explaining "an accounting may serve as a remedy under the statute, but not a separate cause of action").

As for the remaining causes of action[10] for constructive fraud (Count I), fiduciary breach (Count I), unjust enrichment (Count III), and declaratory injunction (Count VIII), Defendants argue that each one fails because Plaintiff has not plausibly pled the necessary elements. (Dkt. No. 16 at 11–20.)

Constructive Fraud by Omission (Count I)

Plaintiff asserts a claim for constructive fraud by omission in Count I. (Dkt. No. 10 at 13, 20, 53.) No such cause of action exists in Virginia. *See N. Virginia Eye Inst., P.C. v. Cynosure, LLC*, No. 5:21-cv-00008, 2021 WL 1554887, at *4 (W.D. Va. Apr. 20, 2021) (explaining there are cognizable causes of action for constructive fraud and fraud by omission, but no cognizable cause of action for constructive fraud by omission) (citing *Denton V. Browntown Valley Assocs. v. Weichert Co. of Va.*, 98 Va. Cir. 486 (2015)); *see also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999) ("[U]nlike fraud for affirmative misrepresentations, concealment requires a showing of intent to conceal a material fact; reckless nondisclosure is not actionable.").

---

[10] Notably, the Amended Complaint states that Defendants' unlawful conduct amounts to: "fiduciary breach, constructive fraud by omission, and unjust enrichment." (Dkt. No. 10 at 13.)

13

Alternatively, if Plaintiff intended to assert a claim for constructive fraud, she must plead "that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Baker v. Elam*, 883 F. Supp. 2d 576, 580 (E.D. Va. 2012) (quoting *Parkman v. Elam*, No. 3:08–cv–690, 2009 WL 736067 at *3 (E.D. Va. Mar. 17, 2009)).  The plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  Accordingly, where Plaintiff relies on omissions rather than misrepresentations, she cannot prevail on a constructive fraud claim.

For completeness, the undersigned also assesses whether the Amended Complaint states a claim for fraud by omission. "Where fraud is premised on an omitted statement or representation— called 'fraud by concealment' or 'fraud by omission'—the plaintiff must provide 'an allegation or evidence of a [1] knowing and [2] deliberate decision not to disclose a [3] material fact.'" *N. Virginia Eye Inst.*, 2021 WL 1554887, at *3 (quoting *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998)).  Under Virginia law, "[s]ilence does not constitute concealment in the absence of a duty to disclose." *Bank of Montreal*, 193 F.3d at 827 (citing *Norris*, 495 S.E.2d at 812.  The duty to disclose may arise "(1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist, or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure)." *Id.* at 829 (4th Cir. 1999) (internal citations omitted).

The Fourth Circuit applies a "relaxed Rule 9(b) standard" in "cases involving alleged fraud by omission or concealment" because "it is well-nigh impossible for plaintiffs to plead all the necessary facts with particularity, given that those facts will often be in the sole possession of the

14

defendant." *Scharpf v. Gen. Dynamics Corp.*, 137 F.4th 188, 195 (4th Cir. 2025) (quoting *Corder v. Antero Res. Corp.*, 57 F.4th 384, 402 (4th Cir. 2023)). However, the complaint must put a defendant on notice as to "the particular circumstances for which [it] will have to prepare a defense at trial," and must demonstrate that "plaintiff has substantial prediscovery evidence of those facts." (*Corder*, 57 F.4th at 402) (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545 (4th Cir. 2019)).

Here, Plaintiff alleges that Defendants "knowingly concealed material facts" by not informing Plaintiff that the Note "would be monetized, pooled, or securitized" and "serve as a foundational asset for revenue-generating financial instruments." (Dkt. No. 10 at 17.) Plaintiff further alleges that nondisclosure of the securitization "materially altered" the "substance" and "original character" of her "obligation," such that Defendants no longer had authority to "compel" Plaintiff to make the monthly mortgage loan payments. (*Id.* at 19, 22.) In characterizing Defendants' conduct, Plaintiff states that Defendants "deliberate[ly] with[eld] material facts for the purpose of private enrichment, all while relying on Plaintiffs continued confidence and uninformed performance." (*Id.* at 23.) Additionally, Plaintiff alleges that RoundPoint "failed to provide full, clear, and timely disclosure of the material terms of the credit transaction, including the rights and liabilities arising from the note and deed of trust, thereby rendering Plaintiff's consent neither knowing nor voluntary." (*Id.* at 22.)

Fatally, the allegations in the Amended Complaint do not establish that Defendants had a duty to disclose the securitization of Plaintiff's instrument. Absent a duty to disclose, Plaintiff's claim for fraud by omission fails. *Doe by & Through Doe v. Baker*, 299 Va. 628, 656, 857 S.E.2d 573, 590 (2021) (affirming dismissal of fraud by omission claim because there was no duty to disclose so the defendants' "silence cannot constitute concealment"). At best, Plaintiff is asserting

15

that the securitization of her instrument is a material fact and she only continued making her monthly mortgage payments because she was acting upon the assumption that her Note had not been securitized. *See Bank of Montreal*, 193 F.3d at 829 (explaining when a duty to disclose arises). Joining the ranks of several courts, the undersigned finds a servicer or lender's securitization of a financial instrument does not trigger a duty to disclose that fact to the corresponding borrower nor does it extinguish the borrower's obligation to continue making monthly payments pursuant to the terms of the financial instrument. *See e.g., Shabazz v. Meridian Bank*, No. 24-2656, 2025 WL 918273, at *2 (D. Md. Mar. 26, 2025) ("Courts in this Circuit and elsewhere have ruled repeatedly that a borrower suffers no harm from [the assignment and securitization of her mortgage]") (collecting cases). For these reasons, the undersigned recommends dismissing the fraud claim in Count I.

Additionally, in affirming the dismissal of fraud by omission claims, the Fourth Circuit has found that a complaint is "inadequate" where "it 'impermissibl[y] aggregat[ed] defendants without specifically alleging which defendant was responsible for which act.'" *Corder*, 57 F.4th at 403 (alterations in original) (quoting *Juntti v. Prudential-Bache Securities, Inc.*, 993 F.2d 228 (Table), 1993 WL 138523, at *2 (4th Cir. 1993) (per curiam)). That type of aggregation hinders a defendants' ability to prepare a defense because the complaint fails to inform each defendant of the nature of his or her alleged participation in the fraud. (*Id.*) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.")). Like the complaints in *Corder* and *Juntti*, Plaintiff's Amended Complaint generally refers to "Defendants" and impermissibly aggregates the conduct of RoundPoint, Watts, and Riskey. Upon review of the allegations for fraud in Count I, "*each*

16

paragraph—except for the first [], which [] incorporate[s] the preceding paragraphs by reference and explain[s] the requirements of [a fraud claim]—refers only to the actions of the 'defendants' generally, not to actions of specific defendants." *Juntti*, 1993 WL 138523, at *2 (emphasis in original). Therefore, the undersigned recommends finding that dismissal of the fraud claim in Count I is appropriate on this separate independent basis.

<u>Fiduciary Breach (Count I)</u>

In Count I, Plaintiff brings a second claim for "fiduciary breach." (Dkt. No. 10 at 17.) To state a claim for breach of fiduciary duty, the plaintiff must allege "(1) a fiduciary duty, (2) breach, and (3) damages resulting from the breach." *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011). Under Virginia law, a lender or servicer does not owe a fiduciary duty to a borrower when "asserting their rights as a creditor." *StellarOne Corp. v. SmartStart LLC*, 83 Va. Cir. 130 (2011). There must be some other factual circumstances to establish a fiduciary relationship between servicer and borrower. (*Id.*) (finding that "defendants were acting in a fiduciary capacity while collecting rent on behalf of defendant"); *see also Aldrich v. Old Point Nat. Bank*, 35 Va. Cir. 545 (1993) ("There is no common law or statutory support in Virginia which supports the creation of a fiduciary duty between a bank and its debtor/customer when the bank and the customer have a creditor/debtor relationship."). Additionally, a borrower may rely on the deed of trust or note which "give[] rise to certain fiduciary duties." *Goodrow v. Friedman & MacFadyen, P.A.*, No. 3:11-cv-20, 2012 WL 6725617, at *6 (E.D. Va. Dec. 27, 2012).

Here, the Amended Complaint does not set forth well-pleaded allegations that there was a fiduciary relationship between Plaintiff and Defendants. Instead, Plaintiff merely asserts that there was a fiduciary "duty of candor," "duty to disclose," and "duty to speak" which arose either from "conscience" or "from Defendants' exclusive knowledge and control of the financial treatment of the [Note]." (Dkt. No. 10 at 20, 23, 27, 32, 47.) She provides no legal support for that position

17

and otherwise "fails to set forth any fiduciary duties arising pursuant to the deed of trust." *Carter v. Countrywide Home Loans, Inc.*, No. 3:07-cv-651, 2008 WL 4167931, at *11 (E.D. Va. Sept. 3, 2008). Accordingly, Plaintiff has failed to demonstrate Defendants owed her the fiduciary duties of candor and disclosure.

Where Plaintiff fails to establish the first element, the Court need not reach whether a breach or any resulting damages occurred. Therefore, the undersigned recommends finding that Plaintiff has failed to state a claim for breach of fiduciary duty.

<u>Unjust Enrichment (Count III)</u>

To state a claim for unjust enrichment, Plaintiff must allege that (1) plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp., II*, 661 S.E.2d 834, 838 (2008). The "benefits" that Plaintiff alleges she conferred on Defendants are the monthly payments made pursuant to her obligations under the Note. (Dkt. No. 10 at 31 (stating that Defendants "extracted substantial financial benefit from Plaintiff's signed mortgage note and subsequent performance").)

In Virginia, "a party may not recover for claims sounding in quasi-contract or unjust enrichment when an express or implied contract already governs its relationship with a defendant." *Fed. Deposit Ins. Corp. v. S.A.S. Assocs.*, 44 F. Supp. 2d 781, 787 (E.D. Va. 1999), *aff'd sub nom. WRH Mortg., Inc. v. S.A.S. Assocs.*, 214 F.3d 528 (4th Cir. 2000). Given that the Note and Deed of Trust govern Plaintiff's obligation to make monthly payments, those payments do not constitute "benefits" for purposes of an unjust enrichment claim. To the extent Plaintiff is also alleging that the "benefits" at issue are the proceeds Defendants received from the securitization of her Note, (*see* Dkt. No. 10 at 31, 35), those proceeds were provided by non-parties, not Plaintiff. The

18

undersigned therefore recommends dismissing the unjust enrichment claim because Plaintiff has failed to set forth well-pleaded allegations to establish the requisite elements.

Declaratory Injunction (Count VIII)

Plaintiff requests "a permanent injunction and declaratory relief enjoining Defendants from any future attempt to collect, foreclose upon, report, transfer, or enforce the purported mortgage obligation." (Dkt. No. 10 at 50–51.) Plaintiff also "seeks a declaration that no valid or enforceable obligation remains in equity due to Defendants' monetization of the note, their fiduciary misconduct, and the severance of title from interest through securitization." (*Id.* at 51.) Once more, Plaintiff asserts the flawed theory that securitization is inherently suspect and that the monetization of her financial instrument relieves her of the obligation to make monthly payments towards her mortgage loan. For the reasons discussed herein, she has not plausibly pled that she holds such legal rights or that Defendants have forfeited their corresponding rights to enforce the Note and Deed of Trust.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "This text has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)). Here, the undersigned recommends finding that "[b]ecause the declaratory judgment claim 'seeks the resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action,' . . . the claim for declaratory relief is duplicative, and that permitting the claim to proceed will not serve a useful purpose in settling the legal relations in issue." *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12-cv-00049,

2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) (quoting *Sofi Classics S.A. de C.V. v. Hurowitz,* 444 F.Supp.2d 231, 249 (S.D.N.Y. 2006)).

### 4. *Whether to dismiss with prejudice*

Given that the undersigned recommends dismissing all eight claims, the remaining issue is whether Plaintiff should be afforded an opportunity to amend. (*See* Dkt. No. 23 at 4.) Leave to amend "[may] be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 200 (4th Cir. 2014) (alteration in original) (quoting *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 510 (4th Cir. 1986)). "In assessing whether a proposed amendment is clearly futile, a district court may look to 'substantive or procedural considerations.'" *Jones v. HSBC Bank USA, N.A.,* 444 F. App'x 640, 643 (4th Cir. 2011) (affirming dismissal with prejudice) (quoting *Davis v. Piper Aircraft,* 615 F.2d 606, 613 (4th Cir.1980)). The undersigned finds that permitting Plaintiff to file another amended complaint would be futile because her core theory of relief rests on the indefensible position that Defendants cannot securitize her financial instrument and must disclose to her if they do so.

### B. Motion for Accounting

Plaintiff also filed a Motion for Accounting to seek preliminary relief before the merits have been adjudicated. (Dkt. No. 19.) The Motion for Accounting, like Count IV of the Amended Complaint, requests "a fiduciary accounting for all funds, credits, and securities derived from the monetization and securitization of Plaintiff's credit instrument." (Dkt. No. 10 at 7, 29, 36–39; *see also* Dkt. No. 19 at 3–4.) Plaintiff argues that such accounting is necessary to "administer any ultimate equitable decree (constructive trust restitution/disgorgement, declaratory relief)." (*Id.*) If

this action is dismissed, then the undersigned recommends denying the Motion for Accounting as moot.

Alternatively, if this action is not dismissed in full, the undersigned recommends denying the Motion for Accounting as premature. *See e.g., Caplin v. Marine Midland Grace Tr. Co. of New York*, 406 U.S. 416, 420–21 (1972) (affirming dismissal of petitioner's claim and the striking of petitioner's related objection where the petitioner filed "the motion to compel an accounting as merely a third vehicle to raise the same claim" at a preliminary stage of the litigation).

## IV.    Recommendations

For the reasons set forth herein, the undersigned recommends that the Court:

- GRANT the Motion to Dismiss (Dkt. No. 15);

- DISMISS with prejudice the eight claims in the "Amended Verified Bill in Equity" (Dkt. No. 10) against Defendants RoundPoint Mortgage Servicing LLC, James Watts and Mary K. Riskey; and

- DENY as MOOT the Motion for Accounting (Dkt. No. 19).

## V.    Notice

The parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72(b), must be filed within fourteen (14) days of its service. Failure to timely object waives appellate review of the substance of this Report and Recommendation and any judgment or decision based on it.

**ENTERED** this 13th day of March, 2026.

Alexandria, Virginia

_____/s/_ _LRV_
Lindsey Robinson Vaala
United States Magistrate Judge

21